Wirt Adams, State Revenue Agent, *v.* Capital State Bank.

74  307
85  233

1. Municipal Ordinances.  *Construction.  Surplusage.*

   A municipal ordinance fixing in its first section a rate of taxation on all property, except banks and solvent credits, and by its second section fixing a lower rate on banks and solvent credits, cannot be held to impose the greater rate on banks.  The exception in the first section and the second section cannot be treated as surplusage.

2. Same.  *Municipal taxes.  Variant rates.*

   If a municipality be without power to impose a lesser rate of taxation on a class of property than that imposed on property generally, and yet attempts to do so by ordinance, if the ordinance be not wholly void, the aggrieved parties are those upon whose property the greater burden was sought to be imposed.

3. Taxation.  *Levy.  Payment.*

   A levy of a tax is indispensable to create a legal obligation to pay it.  A taxpayer who has paid all taxes undertaken to be imposed upon his property, is not in default for not having paid more thereon.

4. Constitution.  *Statutes.*

   An act of the legislature should never be held to be violative of the constitution, unless the right of a litigant in the case before the court requires it to be done.

FROM the chancery court, first district, of Hinds county.
HON. HENRY C. CONN, Chancellor. ·

The court below having entertained jurisdiction of this case, the question as to whether ·it were or were not equitable in character did not arise in the supreme court, by reason of the provisions of sec. 147, constitution of 1890, which provides: "Section 147. No judgment or decree in any chancery or circuit court, rendered in a civil cause, shall be reversed or annulled on the ground of the want of jurisdiction to render said judgment or decree, from any error or mistake as to whether the cause in which it was rendered was of equity or common law jurisdiction; but if the court shall find error in the proceedings other than as to jurisdiction, and it shall be necessary to remand the case, the supreme court may remand it to that court, which, in its opinion, can best determine the controversy."

The facts appear in the opinion.

*Mayes & Harris,* for appellant.

The ordinance, as set forth in the record adopted by the city, made a levy which was extended by its very terms over all of the taxable property of the city, and the subsequent attempt in the ordinance to except banks out of that general levy, was a simple nullity. It did not so except out of the operation of the general levy banking property, and did not operate to qualify or restrain the operation of the general levy. It was pure surplusage under the operation of the doctrine, *utile per inutile non vitiatur.* The simplest rhetorical analysis of the ordinance will show this is true. It is easily and simply severable into two distinct portions. First, there is the portion making the general levy and extending the same over the taxable property of all the city, and that including all of the taxable property in the municipality, except such as was exempt by operation of law. Then comes the attempt to except out of the operation of this general levy, as a distinct movement or

mental operation, or consideration, the special property of banks and solvent credits. The board being without authority to make any such exception, their attempt to do so is a simple nullity. It is not a case in which there never has been any levy, as contended for. It is a case in which there was a levy; and the law does not require that in making a levy the board shall have present in its mind a distinct mental conception of every piece of property on which, and to which, the levy, when made, shall rest and attach. The making of the levy is done by the general declaration that the sum of so many mills *ad valorem* is fixed upon the property of the city; and the exception whereby it was attempted to narrow and restrain is within the operation of the maxim cited above. That maxim has been applied under all sorts of conditions. In *Grand Lodge* v. *New Orleans*, 46 La. Ann., 717, it was applied to a constitutional provision. In *Sneadon* v. *Harris*, 27 Fla., 245, it was applied to a verdict. *In re Upchurch*, 38 Fed. R., 25, it was applied to an act of congress. In *Crawley* v. *Commonwealth*, 123 Penn. St., 275, it was applied to a bond. In *Gibbs* v. *Wall*, 10 Col., 153, it was applied to a bill of exceptions. See, also, *Fletcher* v. *Massey*, 49 Ill. App., 36; *Robertson* v. *Commonwealth* (Va.), 20 S. E. Rep., 362; *Stewart* v. *Collier*, 91 Ga., 117; *State* v. *Hanger*, 5 Ark., 412; 1 Desty on Taxation, 198; *St. Mary's, etc.,* v. *City New Orleans*, 47 La. Ann., 205.

*Brame & Alexander*, for appellee.

The revenue agent is a mere collector. He has no power to assess or levy taxes. If a levy is not made, steps may be taken to enforce the performance of duty on the part of the officers who should make the levy; or, if an improper or insufficient levy is made, the remedy is by appeal. In the matter of a tax sale, it has often been held that there are three fundamental things necessary to be shown: (1) A valid assessment, (2) a valid levy, and (3) a legal sale. We doubt if the power could be conferred upon a revenue agent to make a levy *nunc pro*

*tunc* where no levy has been made. But whether this is true or not, we submit that the act of 1894, under which the revenue agent is authorized to bring suits (Laws, 29) does not include a case of this kind. In order to confer power upon a revenue agent to sue in any case, there must be express legislative authority. It is not pretended that there is any provision in the act of 1894 authorizing the revenue agent to bring this suit unless it is to be found in the general provision that he may sue in all cases where the municipality might sue. This case does not come within the contemplation of that provision of the statute. It will hardly be contended that there is any authority for a municipal corporation to bring innumerable suits against taxpayers who have failed to pay taxes, and especially where the same have never been levied. If this could be done, why not dispense with all assessments and levies and collect all taxes by suits? As to the strict construction applicable to the power of the revenue agent in cases of this character, we refer to *The State* v. *Adler*, 68 Miss., 487; *Thibodeaux* v. *State*, 69 Miss., 683; *State* v. *Vicksburg Bank*, 69 *Ib.*, 99. That the levy of a tax is a fundamental requirement, see *Virden* v. *Bowers*, 55 Miss., 1.

*Calhoon & Green*, on same side.

The truth is, the question involved is not one of revenue, but one of discrimination, and with that question we, confidently assert that the state revenue agent has nothing to do. The necessary revenue was had. Discrimination is the only complaint remaining, and neither the city nor the agent can complain of this. Only a taxpayer can, and he only by appeal. It cannot be disputed that a municipality is powerless to levy a tax or collect a tax without express legislative authority. No legislative authority, no municipal tax. A void legislative authority, a void levy, and this to the amount unauthorized. If the tax be limited to six mills when it should or might have been fourteen and a half mills, then the levy is, or collection is,

certainly void as to the difference, if not *in toto*. If no au-
thority to levy any tax, may the city levy? The question is
not what the legislature should have done, but what it actually
did do.

In the case at bar there were only two parties to the judg-
ment, namely, the municipality—that is, the body of taxpayers
—on the one side, and the Capital State Bank on the other, and
neither appealed or is now complaining. The mayor and board
of aldermen was simply the court which decided between them.
The assessor, representing the municipality—the body of the
taxpayers—presents his roll. Here is the actor. The Capital
State Bank is supposed to be present. Here is the *res*. Where
is the court? Why, the mayor and board of aldermen, of
course. Here, and only thus, do we have the indispensable
constituents in the disposition of causes—a plaintiff, a defend-
ant, and a court. The court can never be aggrieved; it can
never appeal from or collaterally attack its own judgment. The
city, by its board, was the court. The city, through its tax-
payers, might appeal, but the time has elapsed. The bank
might appeal, but the time has elapsed. The court never can
complain in any way or anywhere that its own judgment is a
nullity, and, if it cannot, neither can the revenue agent. If
the municipal court might proceed at all, very manifestly it
could only do so by a reconvention and a new levy. But it is
powerless to do this. It can act only under the authority of
some law, and no statute can be found empowering a levy in
one year for antecedent years.

The position that the general assessment and general judg-
ment are valid, but the exceptions as to banks or solvent credits
is void, is not tenable. It is difficult to conceive of a judgment
of this kind being partly valid and partly void. This might
be urged with some plausibility if there was any voidness about
it, if only the first clause of the city ordinance making the levy
stood by itself. The first section of that ordinance imposes the
annual tax on all property '' except '' banks and solvent credits,

but, as a distinct judgment of levy, section 2 of the ordinance distinctly fixes the levy upon them, and, undoubtedly, that is the judgment which affects the defendant, and from which neither he nor any taxpayer appealed, and is conclusive in this case as to the parties to this suit, even if the act and ordinance were unconstitutional. *Barings* v. *Dabney*, 19 Wall., 1.

Argued orally by *Edward Mayes* and *J. B. Harris*, for appellant, and by *S. S. Calhoon* and *L. Brame*, for appellee.

All the counsel argued the constitutional question elaborately in their briefs, but, as the court did not decide the same, such parts of the briefs are wholly omitted from this report.

THOMPSON, Sp. J., delivered the opinion of the court.

This suit was instituted by the revenue agent, a state officer, who, under the provisions of law (Laws 1894, 29–31, sec. 2), has power "to proceed by suit . . . against all officers, county contractors, persons, corporations, companies, and associations of persons for all past due and unpaid taxes of any kind whatever, for all penalties or forfeitures, for all past due obligations and indebtedness of any character whatever owing to the state, or any county, municipality, or levee board, and for damages growing out of the violation of any contract with the state, or any county, municipality, or levee board." And he is given a right of action in all cases where the state or any county or municipality or levee board has the right of action or may sue. It is averred in the bill of complaint that the city of Jackson levied an *ad valorem* tax of fourteen and one-half mills upon each dollar of the valuation of taxable property in said city for the municipal taxes of 1894, and thirteen mills for the year 1895; that the appellee was the owner of a large amount of taxable property in the city during each of said years, and that for the year 1894 it only paid six mills upon the dollar of the valuation of its property, and five mills for the year 1895. These payments, it will be noticed, equaled

the state tax for said years.  The suit is to recover the balance
of the taxes which, it is claimed, should have been paid by ap-
pellee for said years to the city.  The ownership of property
by the appellee and its assessment for each of said years is not
disputed, nor is it denied by the appellee that its payments for
said years were only of six and five mills respectively, as shown
in the bill of complaint.  The only contest is upon the levy of
the taxes.  For the year 1894 the levy of municipal taxes was,
by ordinance, in the following words:

"SECTION 1.  *Be it ordained by the mayor and board of
aldermen of the city of Jackson,* That an *ad valorem* tax of 14½
mills on the dollar is hereby levied on all property assessed for
taxation in the city of Jackson, except banks and solvent credits,
to be apportioned among the several funds for the purposes fol-
lowing: For general purposes, 5 mills on the dollar; for school
purposes, 2¾ mills on the dollar; for light purposes, 2 mills on
the dollar; for water purposes, 2½ mills on the dollar; for bond
and interest purposes, ½ mill on the dollar; for fire purposes,
¾ mill on the dollar; for turnpike purposes, 1 mill on the dollar.
Total, 14½ mills.

"SEC. 2.  An *ad valorem* tax of 6 mills on the dollar is hereby
fixed and levied on banks and solvent credits, to be apportioned
to the several funds above mentioned, on the basis of a tax of a
14½ mills levy.

"SEC. 3.  This ordinance shall be enforced from and after
its passage."

The levy of the city taxes for the year 1895 was by an ordi-
nance in practically the same words, admittedly of the same
legal effect, the only variance being in the date of passage and
the sums levied.  No point is made on the date of the passage
of either, and the levy for 1895 was thirteen mills on property
generally and five mills on banks and solvent credits.

It is contended by appellant that these ordinances are in legal
effect a levy of fourteen and one-half mills and thirteen mills
respectively upon the dollar of the valuation of all taxable

property in the city, and that the words "except banks and solvent credits," in the first section, and the whole of the second section, in each of said ordinances, are mere surplusage, and that the court below should have treated and this court must treat the ordinances as if these words and the second sections were no part of them, and the maxim, "*Utile per inutile non vitiatur*" is invoked as applicable.

It is argued that the concluding clause of the revenue act of 1894 (Laws 1894, pp. 21–25, sec. 3), which provides that "no city or town shall impose or collect a greater tax on banks or solvent credits than the state tax for the same year," is unconstitutional and void, and that the municipal authorities, in the passage of the ordinances, must not be credited with an intention to levy one tax upon certain classes of property and a different one on all other classes; that all parts of said ordinances from which such an intention can be inferred, or is sought by appellee to be inferred, must be rejected as surplusage. This contention is denied, and thus the point for decision is presented.

The question for this court is this: What was the true intent and purpose of the municipal legislative mind in the adoption of these ordinances? We do not think it justifiable to ignore that part of the first sections of the ordinances and the second sections, which we are asked to treat as surplusage. The whole of each of the ordinances must be considered in determining their meaning and legal effect. That surplusage may be rejected in construing a writing is certainly true, but the very definitions of the term exclude the rejection contended for here. Surplusage is defined in Anderson's Law Dictionary as "matter, in any instrument, foreign to the purpose; whatever is extraneous, impertinent, superfluous, or unnecessary." Webster's International Dictionary defines the term as used in law thus: "Matter which is not necessary or relevant to the case, and which may be rejected." The Standard Dictionary so defines it as "matter in any instrument that is not necessary to

its meaning, but does not affect its validity." We have carefully read and considered each of the cases cited by appellant's attorneys (to be found in the state library) applying the maxim "*Utile per inutile non vitiatur*," and other decisions on the subject, but do not find warrant in any of them for its application to the question before us.

If that part of the revenue act of 1894 the constitutionality of which is questioned, be valid, of course the levies were regular and made in appropriate language. If, however, the law be unconstitutional, then the ordinances, we think, must be construed as if the law had never been passed. Looking at the plain language of the ordinances, we cannot escape the conclusion that it was not the intent of the city authorities to impose the same rate of taxation on all classes of taxable property. When we consider that the municipal legislature was most likely endeavoring to carry the provision of the revenue law of 1894 into effect, we cannot doubt but that it was the design of the ordinances to impose a different rate of taxation on banks and solvent credits from that which it imposed on other taxable property.

Assuming the law in question unconstitutional, for the sake of the argument, and the whole of appellant's contention is predicated of that idea, we have the authorities of the city of Jackson levying a municipal tax for 1894 of six mills on the dollar on the valuation of banks and solvent credits, and a tax of fourteen and one-half mills upon the valuation of all other taxable property; and for the year 1895 a like levy, variant only in amounts. In such case, however wrong in principle or even invalid the ordinances may be, can it be said that a taxpayer who has paid all taxes undertaken to be imposed upon his property, is in default for not having paid more thereon? We think not. If it be that the municipal authorities were without power to levy a tax upon a class of property and another and greater tax upon the balance of the taxable property in the city, it would follow that the ordinances in question are

either entirely void, or that the aggrieved parties are those upon whose property the greater burden was sought to be imposed. In this case we do not think that any greater municipal tax was levied upon banks and solvent credits than that which is shown to have been paid. A levy of a tax is absolutely indispensable to create a legal obligation to pay it. A tax must be due and unpaid; and this in case of taxation of property can only be shown by proof that the property was assessed, listed, and valued, and that the tax was in fact levied by competent authority. It follows from these views that the decree of the court below must be affirmed.

We are asked by counsel on both sides to consider and decide the constitutional question which was argued before us. While the court would be pleased to comply with the request, yet we are constrained by our sense of duty to deny it. In the case of *Thompson* v. *The Grand Gulf Railroad & Banking Co.*, 3 How. (Miss.) 240, Chief Justice Sharkey, in delivering the opinion of this court, said: ''To determine between the constitution and the legislature is often embarrassing, and always demands a cautious and deliberate investigation. In the inquiry is involved the highest function of the judicial department. The acts of the legislature should be sustained, if possible; the constitution must be preserved inviolate.'' While the obligation rests upon the courts to fearlessly see that the constitution is preserved, still wisdom requires that they should proceed in such matters cautiously, and we think an act of the legislature should never be held to be violative of the fundamental law unless the right of a litigant in the particular case before the court requires it to be done. We are fortified in this conclusion by the opinion of Judge Cooley, who, in his work on Constitutional Limitations, page 163, says: ''While the courts cannot shun the discussion of constitutional questions when fairly presented, they will not go out of their way to find such topics. ° They will not seek to draw in such weighty matters collaterally, nor on trivial occasions. It is both more

proper and more respectful to a co-ordinate department to discuss constitutional questions only when that is the very *lis mota.* Thus presented and determined, the decision carries a weight with it to which no extrajudicial disquisition is entitled. In any case, therefore, where a constitutional question is raised, though it may be legitimately presented by the record, yet, if the record also presents some other and clear ground upon which the court may rest its judgment, and thereby render the constitutional question immaterial to the case, that course will be adopted, and the question of constitutional power will be left for consideration until a case arises which cannot be disposed of without considering it, and when, consequently, a decision upon such question will be unavoidable.''

*Decree affirmed.*