## In re WOLCOTT'S·ESTATE.

No. 3310.  Decided March 26, 1919.  (180 Pac. 169.)

1. WILLS—RIGHT OF DISPOSITION—STATUTORY CHARACTER.  The
   right to dispose of property by will is governed and controlled
   by statutes which are mandatory, and unless strictly complied
   with, render the instrument void as a will.  (Page 168.)
2. WILLS—OLOGRAPHIC WILL—STATIONER'S BLANK—STATUTE—"SUR-
   PLUSAGE."  A claimed olographic will, written by decedent on
   a stationer's will form by filling the blank spaces, was not a
   valid will, under Comp. Laws 1917, section 6316, even if the
   matter written in by decedent in her own hand standing alone
   constituted a complete testamentary disposition; the printed
   matter not being "surplusage," that is, extraneous, impertinent,
   superfluous, or unnecessary matter.  (Page 168.)

Appeal from the District Court of Salt Lake County, Third
District; *Hon. R. B. Porter,* Judge.

Petition for letters of administration on the estate of Mary
J. Wolcott, deceased, by Martin Mahnkin, and petition by
Mrs. Hazel Brodbeck for letters testamentary.

From an order appointing Mahnkin administrator, Brod-
beck appeals.

AFFIRMED.

*Ray Van Cott* (J. W. McKinney both of Salt Lake City, of
counsel) for appellant.

*T. Ellis Browne* and *C. W. Morse* both of Salt Lake City,
for respondent.

THURMAN, J.

This is a controversy concerning the legal effect of a docu-
ment purporting to be the last will and testament of Mary J.
Wolcott, deceased.  The controversy arises between Martin
Mahnkin, petitioner for letters of administration, alleging

that the deceased died intestate, and Mrs. Hazel Brodbeck, petitioner for letters testamentary, alleging that deceased left a will. The document is not witnessed, but was offered for probate as an olographic will. The trial court found the issues in favor of Mahnkin, and entered an order appointing him administrator of the estate. Mrs. Brodbeck appeals.

The validity of the document as an olographic will, under Comp. Laws Utah 1917, section 6316, is the sole question presented for determination. The instrument was written upon a stationer's will form, part of which was printed and part left blank. The blank spaces were filled by deceased in her own handwriting. The words and figures of the entire instrument are as follows:

*"Will.*

*"In the name of God, amen, I,* Mary J. Wolcott, *of the* city of Salt Lake, *county of* Salt Lake, *state of* Utah, *of the age of* forty-seven *years, and being of sound and disposing mind and memory, and not acting under duress, menace, fraud, or undue influence of any person whatever, do make, publish, and declare this my last will and testament, in manner following, that is to say:*

*"First.* That the house and lot together with all furniture at 957 E. Sixth S. St. together with the silverware be the property of Mrs. Hazel Brod.

*"Secondly.* beck during her lifetime and after her death be sold and the proceeds be placed to the benefit of the Teachers' Benefit Association of Salt City.

*"Thirdly.* That the house and lot at 1210 9th East be transferred to Mrs. Watson Bracken of Ophir, Utah.

"That the house and lot at 624 4th Ave. be transferred to Mrs. Ella Murphy Smith during her lifetime and after her death be sold and that the proceeds be placed to the credit of the Salt Lake Teachers' Hospital Fund.

"That my father's violin be sent to Fred Weale of Elmira, N. Y. That my mink furs be given to Mrs. Flora Goodsell of Salt Lake City, Utah. As soon as possible I want all stocks and vacant property disposed of and after all debts be paid

Appeal from Third District.

whatever is left be given to the Teachers' Hospital Fund of Salt Lake City, Utah.

"*Fourthly,* I want my horses saddle bridle buggy, harness, etc., to be given to John Treutlen together with the sum of $100.00.

"After all debts are paid any money remaining is to be equally divided between Ella Murphy Smith and Hazel Brodbeck. My mother's watch is to be given to her niece Kittie Welts of Auburn, New York.

"I hereby appoint Martin Mahnkin administrator without bonds.

"*Fifthly.* I wish the sum of $250 paid to Mrs. Isabelle D [blot] enny of Beaver, Utah, also $250 to Mrs. Mary Mc [blot] Lane of Salt Lake and the sum of $100 to Mrs. Harry Campbell of Salt Lake City.

"*Sixthly.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"*Lastly. I hereby nominate and appoint*. . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*the executors of this, my last will and testament, and hereby revoke all former wills by me made.*

"*In witness whereof, I have hereunto set my hand and seal this* Fifth *day of* Oct., *in the year of our Lord one thousand nine hundred and* 17. . . . . . . . . . . Mary J. Wolcott. [L. S.]

"*The foregoing instrument, consisting of two pages, besides this, was at the date hereof, by the said* Mary J. Wolcott *signed and sealed and published as, and declared to be, his last will and testament, in presence of us, who at his request, and in his presence, and in the presence of each other, have subscribed our names as witnesses thereto.*

Mary J. Wolcott,
"*Residing at* Salt Lake City, Utah.
"
. . . . . . . . . . . . . . . . . . . . . . . . ,
"*Residing at* . . . . . . . . . . . . ."

The italicized words and figures represent the printed portion; the remainder was written entirely by deceased. The statute above referred to is as follows:

"An olographic will is one that is entirely written, dated, and signed by the hand of the testator himself. It is subject to no other form, and may be made in or out of this state, and need not

be witnessed. Such wills may be proved in the same manner as other private writings."

There is no doubt that the deceased intended the document to be her will, but the right to dispose of property by will is governed and controlled entirely by statute. Such statutes are mandatory, and, unless strictly complied with, the instrument, as a will, is void. This will appear from many of the authorities hereinafter cited.

Appellant, in offering the document for probate, offered only the words and figures written by the deceased. Her counsel expressly excluded the printed matter from his offer and by this means sought to bring the document within the terms of the statute. The offer was unique and the proceedings somewhat anomalous. If the deceased had written across the printed words and figures, or through them, or over them, or entirely regardless of them or their meaning and effect, her writing alone would have been admissible in evidence to the same effect as if written on blank paper. But such was not the case. The printed matter in the instrument offered was just as much a part of its contents as the script written by her own hand. She adopted the printed matter in order to fully express her intention. She no doubt procured the blank form for the purpose of aiding her to express her intention in a formal manner. No other conclusion can properly be drawn if we view the instrument from the standpoint of reason unhampered by desire. No criticism of appellant's counsel can be justly indulged in for making the offer in the way he did. While from every point of view such an offer was untenable, nevertheless, as stated by him, there does not appear to be any adjudicated cases against his contention. Neither does it appear that any such offer was ever made before in a case of this kind. Counsel has referred us to no authority. If there are authorities sustaining the right of a party to offer for probate as a will such portions of a document as he may desire for the purpose of making a case, while excluding other portions which would defeat his purpose, such authorities are not well considered, and we would hesitate to follow

them.  If the matter excluded from the offer was totally dis-
connected therefrom, was not germane, or was entirely irrel-
evant to the purpose and object of the instrument, a differ-
ent question would be presented.   Such matter might be
treated as surplusage and disregarded.  ''Surplusage'' is de-
fined by a distinguished author:

"Matter in any instrument, foreign to the purpose; whatever is
extraneous, impertinent, superfluous or unnecessary."   Anderson's
Dictionary of Law, 997; *Adams* v. *Capital State Bank*, 74 Miss. 307,
20 South. 881.

Instances of such matter occur in many of the cases cited.
The fact that the matter written by deceased in her own
hand, standing alone, might constitute a complete testament-
ary disposition of her property, does not alter the case.   The
document offered by appellant is not the document prepared
by deceased as her will.   The document actually prepared by
her does not meet the statutory requirements.   In either case
the instrument cannot be sustained as a will without arbi-
trarily setting the statute aside and substituting our will for
that of the Legislature.   This we have no right or power to
do, however much we may appreciate the hardship incident to
a strict construction in the present case.   Unflinching loyalty
to the law, both in letter and in spirit, is the only sure ground
upon which to stand.   Even if we had the right to express our
views in the present case as to what the statute ought to be,
we are not prepared to say what changes should be made.
The law in question is founded upon wise and prudential
considerations.   It is based upon the experience of enlight-
ened governments whose growth and development have been
upward and onward in the attainment of a higher civilization.

It is not our purpose to comment upon the authorities cited
by the parties litigant.   The briefs on both sides have been
well prepared and the leading authorities carefully collated,
thereby rendering the court a service the importance of which
is duly acknowledged.

Appellant's counsel relies on the following authorities:
*Morrison et al.* v. *Bartlett*, 148 Ky. 833, 147 S. W. 761, 41 L.
R. A. (N. S.) 39; 1 Jarman, Wills, 26; *In re Estate of Rand*,
61 Cal. 468, 44 Am. Rep. 555; *In re Soher's Estate*, 78 Cal.

477, 21 Pac. 9; *Baker* v. *Brown,* 83 Miss. 793, 36 South. 539, 1 Ann. Cas. 371; *Succession of Robertson,* 49 La. Ann. 868, 21 South. 586, 62 Am. St. Rep. 672; *Emsweller* v. *Wallace,* 78 W. Va. 214, 88 S. E. 787; *Pena* v. *New Orleans,* 13 La. Ann. 86, 71 Am. Dec. 506; 14 Ency. Ev. 435, 436; *In re Estate of Skerrett,* 67 Cal. 585, 8 Pac. 181; Alexander, Comm. Wills, section 1314; also section 1312, same volume; *Armstrong* v. *Walton,* 105 Miss. 337, 62 South. 173, 46 L. R. A. (N. S.) 552, Ann. Cas. 1916E, 137; *In re Chevallier's Estate,* 159 Cal. 161, 113 Pac. 130; *In re Lakemeyer's Estate,* 135 Cal. 28, 66 Pac. 961, 87 Am. St. Rep. 96; *Caine* v. *Hagenbarth,* 37 Utah, 69, 106 Pac. 945.

Respondent's counsel cites the following authorities to the effect that the instrument is not a valid will: *In re Jenkin's Will,* 157 N. C. 429, 72 S. E. 1072, 37 L. R. A. (N. S.) 842; *In re Estate of Martin,* 58 Cal. 530; *In re Carpenter's Estate,* 172 Cal. 464, 156 Pac. 464, L. R. A. 1916E, 498; *Armant's Succession,* 43 La. Ann. 314, 9 South. 50, 26 Am. St. Rep. 183; *Heirs of Williams* v. *Hardy,* 15 La. Ann. 286, in which it is said, "Where a testament, purporting to be of the olographic kind, is not entirely written by the testator, it is null;" *Succession of Robertson,* 49 La. Ann. 868, 21 South. 586, 62 Am. St. Rep. 672; *In re Plumel's Estate,* 151 Cal. 77, 90 Pac. 192, 121 Am. St. Rep. 100; *In re Noyes' Estate,* 40 Mont. 190, 105 Pac. 1017, 26 L. R. A. (N. S.) 1145, 20 Ann. Cas. 366; *In re Estate of Rand,* 61 Cal. 468, 44 Am. Rep. 555; 3 Alexander, Comm. Wills, section 312; *In re Estate of Billings,* 64 Cal. 427, 1 Pac. 701, in which the court said: ·

"Sec. 1277, Civil Code, requires that a paper, to constitute an olographic will, must be entirely written, dated, and signed by the hand of the testator. It must be entirely written, it must be entirely dated, and it must be entirely signed by him. If it be partly written by him and party written by another, or printed; if it be partly dated or signed by him and partly by another—it is not a compliance with the statute."

The following excerpts from standard authors on wills, quoted by respondent, are pertinent:

"It is absolutely essential that an olographic will be wholly in

the handwriting of the testator. Therefore an instrument partly written and partly printed will be refused probate." 30 Ency. Law (2d Ed.) p. 552.

"A holographic will is one wholly written, dated and signed in the proper handwriting of the testator." Remsen, Preparation and Contests of Wills, p. 19.

See, also, Schouler on Wills, Executors and Administrators, section 255, and 1 Underhill, Law of Wills, 15.

"The holographic will must be entirely in the handwriting of the testator, at least as to every part necessary to its validity. A will written on the printed form by filling in blanks is not a good holographic will." Page, Wills, section 230.

"The writing must all be made by the testator. A will on a printed form with the blanks filled in the handwriting of the deceased is not holographic." Rood, Wills, section 270.

The decided weight of authority seems to be against the contention of appellant. The judgment is affirmed at appellant's costs.

CORFMAN, C. J., and FRICK, WEBER, and GIDEON, JJ., concur.