# Staunton.

## GARRETT G. GOOCH, III, ET AL., BY, ETC., V. LOULIE M. GOOCH, ET ALS.

### September 21, 1922.

1. WILLS—*Codicil—Holographic Will—Codicil on Printed Form—Printed Words may be Disregarded.*—Where a codicil was written upon a blank form, printed portions of the form on which the writing is found may be disregarded, leaving that portion of the writing which was wholly in the handwriting of the testator and signed by him, and which was complete and entire in itself, a holographic codicil, which may be admitted to probate.

2. CODICIL—*Holographic Codicil—Attestation Clause—Printed Form—Harmless Error.*—It was error to admit to probate as part of a holographic codicil the attestation clause, where such attestation clause was on a printed blank filled in by the testator, where there was no portion of it altogether in the handwriting of the testator which was complete and entire in itself. But in the instant case the admission of the attestation clause was not assigned as error, and, indeed, was harmless error.

3. WILLS—*Codicil—Finality of Testamentary Intention—Failure to Fill Out Attestation Clause—Case at Bar.*—In the instant case testator, an applicant for initiation into the Order of Scottish Rite Masonry, in accordance with a requirement that an applicant should have made a will or should make a will before initiation, wrote upon the printed form furnished applicant that he had made a will in favor of his wife, signed it, and wrote his name in the attestation clause, which, however, was not witnessed.

   *Held:* That the failure to use the attestation clause was fully explained by the evidence touching the purpose of the execution of the writing, and that the writing evidenced the final testamentary intention of the testator.

4. WILLS—*Revocation—Birth of Children.*—Where a testator made a will in favor of his wife without making any provision for any child that he might thereafter have, upon the birth of children the will became, and, during their minority continued, inoperative, unless and until it was revived after the birth of the children.

5. WILLS—*Revocation—Revival of Revoked Will—Section 5234 of the Code of 1919—Case at Bar.*—In the instant case testator, an applicant for

initiation into the Order of Scottish Rite Masonry, in accordance with a requirement that an applicant should have made a will or should make a will before initiation, wrote upon the printed form furnished applicant "My will is made in favor of my wife, Loulie M. Gooch, duly signed and filed, Witnessed by," naming two witnesses, and signed his name thereto.

*Held:* That the testator intended a republication of his original will (which had been revoked by the birth of children) at the time the paper was executed, thus bringing the codicil within section 5234 of the Code of 1919, providing that a revoked will may be revived by a codicil to the extent to which an intention to revive the same is shown.

6. WILLS—*Revival—Codicil.*—Where the testator in a codicil refers to a will and gives sufficient demonstration that when making the codicil he considered the will as his will, a republication of the will may be implied.

7. WILLS—*Revival of Revoked Will—Codicil.*—At common law if it appears on the face of a codicil or otherwise, whether impliedly or expressly, that the codicil was intended to revive the original will, it had that effect. Section 5234 of the Code of 1919 merely adopted the settled rule at common law; and, by the concluding provision thereof, to the effect that a revoked will shall be revived by the common law method "only to the extent to which an intention to revive the same is shown," the statute merely meant to provide a statutory rule that a codicil shall not operate, *proprio vigore,* to revive a revoked will, where the intention so to do does not appear on the face of the will, or otherwise, either expressly or impliedly.

8. WILLS—*Republication—Parol Evidence.*—Neither the delivery of a deed, nor the publication of a will, is a part of the instrument; they both lie in parol, and yet they are legitimate and important matters in the proof of its execution; and parol proof is held to be admissible in evidence of republication of a will.

9. WILLS—*Revival of Revoked Will by Codicil—Knowledge of Testator that his Will had been Revoked.*—It is not necessary to a revival of a revoked will, by a codicil thereto, that the codicil should show that the testator knew that his will had been revoked; the essential thing to be shown by the codicil is that, as expressed therein or to be implied therefrom, the codicil conveys the meaning that the will still expresses the testamentary intention of the testator as of the time of the execution of the codicil, and to what extent the will still .expresses that intention, whether to the extent of the whole will, and, if not, to what extent.

10. WILLS—*Revival of Revoked Will by Testator—Intention to Revive Revoked Will.*—The fact that a testator did not intend the language used in a codicil reviving a will revoked by the birth of children to operate as a codicil is immaterial.

11. Wills—*Form—Intention of Testator to Make a Will—Parol Evidence.*—
There is nothing that requires less formality than the body of a will
or testament. If it be duly signed, attested and published, it may
assume almost any form, provided it be intended by the party to
take effect after his death. Nor is it necessary that the testator
should intend to perform, or be aware that he has performed, a tes-
tamentary act. The form of a paper does not affect its title to pro-
bate, provided it be the intention of the deceased that it should
operate after his death. The true question is whether the deceased
has done a testamentary act; and that involves, not merely the
terms, but also the perfect and appropriate execution of the instru-
ment; and the latter is the proper subject of parol evidence.

12. Wills—*Revocation by Birth of Children—Revival by Codicil.*—A will re-
voked by marriage, or by the birth of a child or children, can be
revived by a subsequent codicil recognizing the existence of the will.
A re-execution of the will is not necessary.

Appeal from a decree of the Corporation Court of the
city of Roanoke. Decree for defendants. Complain-
ants appeal.

*Affirmed.*

On May 17, 1909, Garrett G. Gooch, Jr., who then
had no child living, executed his will of that date, in due
form, by which he devised and bequeathed to his wife,
Loulie M. Gooch, one of appellees, all of his property,
real and personal, without making any provision for
any child he might thereafter have.

The witnesses who attested this will were E. W. Poin-
dexter and A. C. Hopwood, two attorneys in Roanoke,
Va. In 1911 one of appellants, Garrett G. Gooch, III,
was born, and in 1916 the other of appellants, Marcia
Morton Gooch was born. Following the testator's
death the said will was found among his private papers,
was duly admitted to probate on January 26, 1920, and
the appellees qualified as administrators c. t. a.

The bill filed by appellants, claims that, as said chil-
dren survived the testator, the said will is embraced
within the operation of the statute making provision

for pretermitted children (Code 1887, section 2527, now contained in Code 1919, section 5242), unless the writing presently to be mentioned signed by the said testator after the birth of the children constituted, as the appellees claim, a codicil to the said will, and "an intention to revive the same is shown" within the meaning of the statute (Code 1887, section 2519; now contained in Code 1919, section 5234).

The first mentioned statute (Code 1919, section 5242), so far as material, is as follows:

"If any person die leaving a child    *    *    and leaving a will made when such person had no child living, wherein any child he might have is not provided for or mentioned, such will    *    *    *    shall be construed as if the devises and bequests therein had been limited to take effect in the event that the child shall die under the age of twenty-one years, unmarried and without issue."

The second mentioned statute (Code 1919, section 5234), is as follows:

"No will or codicil, or any part thereof, which shall be in any manner revoked, shall, after being revoked, be revived otherwise than by the re-execution thereof, or by a codicil executed in manner hereinbefore required, and then only to the extent to which an intention to revive the same is shown."

The manner in which wills or codicils are required to be executed, referred to in the statute last quoted, is, so far as material, provided for in the statute (Code 1887, section 2514, now Code 1919, section 5229), as follows:

"No will shall be valid unless it be in writing and signed by the testator    *    *    in such manner as to make it manifest that the name is intended as a signature:"—then follow provisions requiring the signature to be made, or the will acknowledged by the testator, in

the presence of at least two competent witnesses, etc.,
"unless it be wholly in the handwriting of the testator."

The material facts appearing in evidence in the record are as follows:

The writing which the appellees, as aforesaid, claim constituted a codicil, having the effect aforesaid under what is now section 5234 of the Code of 1919, was signed on April 23, 1919, delivered to a certain custodian and subsequently held by the latter, under the circumstances now to be mentioned.

On April 23, 1919, the said testator was a candidate for initiation into the fifth degree of the Order of Scottish Rite Masonry. As shown in evidence, every member of that order is obligated to see that the testamentary disposition of their property by deceased members "are carried out in so far as they legally may" and, to that end, it is a rule of the order that every candidate for the degree mentioned shall, at the time of his initiation, have in existence a will, which expresses the testamentary intent of the candidate, existing at that time, with respect to the disposition of the property he may leave at his death; and that rule requires that every candidate for such degree shall, if no such will is already in existence at such time, execute, before initiation, his will, upon a printed form therefor furnished the candidate by the order, which printed form is as follows:

"In the name of God, amen! I_____
_____being of sound mind and memory, but knowing the uncertainty of human life, do now make and publish this my last will and testament, that is to say:

(blank)

_____(SEAL)

"Signed, sealed, published and declared by the said

_____, the testator, as and for his last will and testament; and we, at his request and in his presence, and in the presence of each other, have hereunto subscribed our names as witnesses thereto, this_____day of _____ A. D. 19_____.

_____

_____

_____ ''

Before the initiation of the testator he was furnished by the secretary of the lodge with certain printed instructions, among which was the follow'ng:

"Write now, in good faith, your last will and testament, precisely as if you were about immediately to be engaged in battle and expected to fall in the action,"— followed by the note—"(A legal form should be provided for the candidate)."

At the same time the testator was, by the said secretary, furnished with a copy of the aforesaid printed form and instructed that "if a will had been previously made he (the testator) could so state the fact in the form given him, and that would be all that was necessary, but, if no will had been previously made, he must make out one, as the Scottish Rite Masonry required every individual joining the Rite to execute a will, otherwise he would not be permitted to advance further in the order." The secretary further instructed the testator at that time that if the latter "already had a will *in existence* it would be not only necessary for him to so state on the printed form * * , but also to sufficiently identify the will *so that it could be located at the time of his death.*" (Italics supplied).

Thereupon the testator, after the words "that is to say," in the printed form, wrote, all in his own handwriting, the following:

"My will is made in favor of my wife, Loulie M. Gooch, duly signed and filed.

"Witnessed by:

"E. W. Poindexter and

· "A. C. Hopwood,

"Attorneys in Roanoke, Va.,"

and signed his name on the blank line opposite the word "(Seal)" on the printed form, as follows: "G. G. Gooch Jr.:" and wrote his name, "G. G. Gooch, Jr." in the blank therefor in the printed form aforesaid of the attestation clause, and filled in the blanks therein left for the date with "23rd," "April," and "9,"—making the attestation clause read as follows: "Signed, sealed, published and declared by the said *G. G. Gooch, Jr.*, the testator, as and for his last will and testament; and we, at his request, and in his presence, and in the presence of each other, have hereunto subscribed our names as witnesses thereto this *23rd* day of *April, 1919.*" The portion thereof which is in the handwriting of the testator being in italics.

Whereupon the testator delivered the paper to the said secretary, who filed it among the records of the lodge, as he was required to do by the rules of the order. There this paper remained until after the death of the testator.

On September 20, 1920, on motion of the aforesaid administrators c. t. a. in an *ex parte* proceeding, so much of the last named writing as was all in the handwriting of the said testator, together with the attestation clause with the blanks therein filled as aforesaid, was admitted to probate as a codicil to the aforesaid original will.

In October, 1920, the instant suit was instituted, the bill filed by appellants alleging substantially the aforesaid facts, and praying that the operation of the said original will be declared suspended by reason of the birth of the infant complainants, the said infant appellants; that the said latter writing be declared of no binding force or effect; and that the said *ex parte* order of court of September, 1920, admitting such writing to probate as a codicil to said original will, be set aside and annulled.

The record discloses that the suit was instituted in behalf of the infants at the request of their said mother in order that the interests of such infants might be properly protected; and the positions taken by the appellees in the cause were taken merely for the purpose of raising the questions of law arising upon the facts for the determination of the court; and the depositions of witnesses were taken and read in evidence, developing the facts, solely for that purpose.

The court below directed an issue out of chancery to be tried by a jury at the bar of the court, and there was a verdict of the jury upon that issue finding, in substance, that the later writing aforesaid was a codicil to the original will aforesaid and that such will and codicil constituted the last will and testament of the said testator.

The decree under review was thereupon entered, which contains the same holding as the verdict of the jury, and dismissed the suit, thereby declining to interfere with the aforesaid *ex parte* action of the court admitting the original will and codicil to probate and approving of that action.

In this decree the following conclusions of the court are stated, namely:

That the aforesaid paper of which the portion in the

handwriting of the testator is held to be a codicil, as aforesaid, "although not witnessed, is a sufficient compliance with the formal requisites for the execution of a will, since the printed portions thereof may be disregarded and stricken out as surplusage, leaving a holograph will complete and entire in itself;" and

That such will (or codicil) "was executed (by the testator) under circumstances sufficiently recognizing and identifying his original will of May 17, 1909, and indicating a continuance of testamentary intent by which he was actuated in executing said original will."

*Poindexter, Hopwood & Poindexter*, for the appellants.

*Woods, Chitwood, Coxe & Rogers*, for the appellees.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

[1] The assignments of error do not challenge the correctness of the decree under review in its holding that the printed portions of the form on which the writing was found, which is held to be a codic l to the original will, may be disregarded, leaving that portion of the writing which is wholly in the handwriting of the testator and signed by him—(namely: "My will is made in favor of my wife, Loulie M. Gooch, duly signed and filed.   Witnessed by E. W. Poindexter and A. C. Hopwood, attorneys in Roanoke, Va.   G. G. Gooch, Jr.")—complete and entire in itself, and that this holograph writing was a testamentary act, so that the writing was properly admitted to probate as a holograph codicil to the original will.   And the following authorities, cited in the petition and in the brief of counsel for appellees, fully sustain the correctness of these conclusions: 28 R. C. L. sec. 155, p. 197; 1 Redfield on Wills (4th ed.),

p. 6; *Pollock* v. *Glassell*, 2 Gratt. (43 Va.) 439; *Perkins*
v. *Jones*, 84 Va. 358, 4 S. E. 833, 10 Am. St. Rep. 863;
bearing upon the testamentary character of the writing;
40 Cy. 1130; 1 Alexander's Com. on Wills, 650; 28 R. C.
L., sec. 116, pp. 161-2; Note in 20 Ann. Cas. 370; *Baker*
v. *Brown*, 83 Miss. 793, 36 So. 539, 1 Ann. Cas. 371;
touching the subject of the immateriality of the printed
portions of the writing. See also *In re Wolcott*, 54 Utah
165, 180 Pac. 169, 4 A. L. R. 727; *In re Robertson's Suc-
cession*, 49 La. Ann. 868, 21 So. 586, 62 Am. St. Rep.
672; *In re Plumel*, 151 Cal. 77, 90 Pac. 192, 121 Am. St.
Rep. 100; and *In re Noyes*, 40 Mont. 190, 105 Pac. 1017,
26 L. R. A. (N. S.) 1145, 20 Ann. Cas. 366; on the sub-
ject of when a paper partly printed and partly written
cannot be held to be holographic.

[2, 3] The action of the court, in admitting the attes-
tation clause to probate, was erroneous, as there is no
portion of this altogether in the handwriting of the tes-
tator which is complete and entire in itself. But this is
not assigned as error, and was, indeed, harmless error.

Upon the subject of the finality of the testamentary
intention expressed in the codicil, *Perkins* v. *Jones*, just
cited, is in point. It is true that that case was decided by
a divided court of three judges, and that the dissenting
opinion of Judge Lewis is an able one. But the instant
case is much stronger than that to support the holding
that the codicil evidences the final testamentary inten-
tion of the testator. In that case there was no evidence
*aliunde* explaining, consistently with the finality of the
testamentary intention, the failure to use the attesta-
tion clause found at the foot of the writing, and the de-
cision was based solely on the evidentiary effect to be
given the signature under the statute of wills. Whereas
in the instant case the failure to use the attestation
clause is fully explained by the evidence touching the
purpose of the execution and the delivery of the writing.

[4] It should be also noted in passing, that it is settled, upon facts such as are involved in the instant case, that on the birth of the children the original will became, and, during their minority, continued, inoperative (*Wood* v. *Tredway*, 111 Va. 526, 69 S. E. 445), unless and until it was revived after the birth of the children.

The following question, however, is presented for our decision by the assignments of error, namely:

[5, 6] 1. Does it appear in evidence in this cause, on the face of the codicil, or otherwise, that the testator intended a republication of his original will at the time the codicil was executed, so as to bring the codicil within the statute, section 5234 of the Code above quoted, and thus make it operate to revive the original will after the birth of the children?

This question must be answered in the affirmative.

When the codicil is read in the light of the sole purpose for which the codicil was executed, shown in evidence, namely, in order to express the testamentary intention of the testator existing at the time of such execution, what is said in the codicil carries with it the plain and, indeed, irresistible inference or implication that it has the meaning that the original will expressed the testamentary intention of the testator existing at the time the codicil was executed, and that that intention extended to the provisions of the original will as a whole, and not merely to a part of it. It is thus "shown" (to use the language of the statute just referred to), by the evidence in the cause, that the codicil in question intended to revive the whole of the original will, so that the codicil, under such statute, operated to revive the whole of such will after it had been, under section 5242 of the Code, also above quoted, revoked, conditionally or contingently, by the birth of said children.

It is admitted in the brief for appellees that such would have been the effect of the codicil prior to the statute aforesaid (section 5234), on the subject of the revival of wills which have been in any manner revoked. It is admitted that the holding in *Corr* v. *Porter*, 33 Gratt. (74 Va.) 278, and *Hatcher* v. *Hatcher*, 80 Va. 169, (which were cases which involved codicils executed prior to such statute), is correct as applicable to the wills involved therein. That holding as expressed in the opinion in *Corr* v. *Porter*, 33 Gratt. (74 Va.) at p. 282 is as follows:

"There is some conflict among the authorities upon the proposition, whether a codicil, *proprio vigore, independently of an expressed or implied intention,* operates as a republication, *or whether it must appear, on the face of the codicil or otherwise, it was so intended.* It has been settled   *   *   by a long train of decisions that no particular words are necessary to constitute a republication. All that is necessary is, that it shall appear that the testator considered the paper" (the original bill) "as his will at the time he made the codicil. Anything is sufficient which indicates a continuance of the testamentary intent with respect to the disposition of the testator's property.   *   *   *   Where the testator in the codicil refers to the will and gives sufficient demonstration that when making the codicil he considered the will as his will, there a republication may be implied." (Italics supplied).

The same holding, in substance, as expressed in the opinion in *Hatcher* v. *Hatcher*, is as follows: "The codicil, it is admitted, operates as a republication of the will, and the effect of the republication is to bring down the will to the date of the codicil, so that both instruments are to be considered as speaking at the same date and taking effect at the same time."

It is contended, however, that, because of the statute last referred to, there is a difference between the republication of a will which has never been revoked and the revival or republication of a will which has been in any manner revoked; and the case of *Francis* v. *Marsh*, 54 W. Va. 545, 555, 46 S. E. 578, 1 Ann. Cas. 665, is cited in support of that position.    That case involved the West Virginia statute, which is the same as said section 5234, under which a will once in any manner revoked can be revived by codicil "only to the extent to which an intention to revive the same is shown."    And in that case *Corr* v. *Porter* and *Hatcher* v. *Hatcher* are reviewed and held to have involved the republication of an existing will, not the revival of a revoked will, and to have been governed by the common law, as the codicils therein involved were executed prior to 1850, when the Code of 1849 of Virginia went into effect—in which Code this statute seems first to have appeared—and it is said, in *Francis* v. *Marsh*, that, under the statute just mentioned, "The difference between republication of an existing will, and revival or republication of a revoked will, by a codicil is that in the latter case the codicil must show an intent to revive, while in the former it need not."    But, as appears from an examination of the able opinion in that case, which contains an instructive review of the authorities, it holds, as correctly set out in the head note, that any language in the codicil "from which such intent may reasonably be inferred, such as a reference to the will by date,   *   *   *   *   in the absence of contradictory matter found on the face of the codicil or in the surrounding circumstances, is sufficient."

In *Francis* v. *Marsh* the original will involved was revoked by marriage; (of which result, we may remark, parenthetically, the testator was shown to have been

unaware).   The testator subsequently executed the following codicil: "I, John Marsh, do make this a codicil to my will made on the 6th day of August, 1895" (that being his original will), "and do nominate and appoint J. D. Watson as one of the executors of my will and do hereby revoke the appointment of J. R. Jewell to said will." And the court held that the effect of the codicil, under the statute, was to revive the whole will. That holding is in entire accord with the views we have expressed above, since the intention to revive the whole of the original will referred to is plainly implied by what is said in the codicil; only in the case before us there is parol evidence by which the intent in question is "shown" *impliedly,* even more clearly.

[7] It was the settled rule at common law that if it appeared *on the face of the codicil or otherwise,* whether *impliedly or expressly,* that the codicil was intended to revive the original will, it had that effect.   The conflict in the authorities, referred to in *Corr* v. *Porter, supra* (33 Gratt. [74 Va.] at p. 282), was not on that subject, but whether, where such intention did *not* appear *on the face of the codicil or otherwise, either expressly or impliedly,* "a codicil, *proprio vigore,* * * * operates as a republication * * ." We think that the statute merely adopted the settled rule at common law; and, by the concluding provision, to the effect that a revoked will shall be revived by the common law method, "only to the extent to which an intention to revive the same is shown," we think the statute merely meant to settle the aforesaid conflict in the authorities, by providing a statutory rule that a codicil shall not operate, *proprio vigore,* to revive a revoked will where the intention so to do does *not* appear, on the face of the will, or otherwise, either expressly *or impliedly,* but shall revive such a will "only to the extent to which an intention to

revive the same is shown," either *impliedly or expressly*, by the codicil, when read in the light of all the evidence admissible on the subject.

[8] As to what evidence is admissible on such a subject, this is said in *Pollock* v. *Glassell, supra* (2 Gratt. [43 Va.] at p. 458): "Neither the delivery of a deed, nor the publication of a will, is a part of the instrument; they both lie in parol, and yet they are legitimate and important matters in the proof of its execution  *   * ;" and such proof is held to be admissible in evidence.

[9] It is not necessary to a revival of a revoked will, by a codicil thereto, that the codicil should show that the testator knew that his will had been revoked; the essential thing to be shown by the codicil is that, as expressed therein or to be implied therefrom, the codicil conveys the meaning that the will still expresses the testamentary intention of the testator as of the time of the execution of the codicil and to what extent the will still expresses that intention, whether to the extent of the whole will, and if not, to what extent. *Francis* v. *Marsh, supra* (54 W. Va. 545, 46 S. E. 573, 1 Ann. Cas. 665; Note 1917D, Ann. Cas. 1176).

[10, 11] The fact that the testator did not intend the language used in the codicil to operate as a codicil is immaterial. As said in *Pollock* v. *Glassell, supra* (2 Gratt. [43 Va.] at p. 455-6): "There is nothing that requires less formality than the body of a will or testament. If it be duly signed, attested and published, it may assume almost any form, provided it be intended by the party to take effect after his death.  *  * Nor is it necessary that the testator should intend to perform or be aware that he has performed a testamentary act.  *  *  * It is, therefore, well settled that the form of a paper does not affect its title to probate, provided it be the intention of the deceased that it should operate

after his death.   It is contended, however, that this intent must appear upon the face of the instrument and can never be proved by parol.   This would perhaps be true if it were a naked question of intent; but it is something more.   The true question is whether the deceased has done a testamentary act; and that involves   *   *   *   *, not merely the terms, but also the perfect and appropriate execution of the instrument; and the latter is the proper subject of parol evidence."

[12] It is also argued on behalf of the appellants that a will once revoked by marriage, or by the birth of a child or children, can be revived only by a valid re-execution; that mere subsequent recognition by a codicil will not revive the revoked will; and the following authorities are cited to sustain such position, namely: 28 R. C. L. sec. 152, p. 194; *Stewart* v. *Mulholland*, 88 Ky. 36, 10 S. W. 125, 21 Am. St. Rep. 320; and *Bohanon* v. *Walcot*, 1 How. (Miss.) 336, 29 Am. Dec. 631.

In the first place, this position ignores the provision of the statute that a revoked will may be revived by a codicil, as well as by a re-execution of the revoked will. Further:

The statement in the text of 28 R. C. L. just mentioned, which is quoted in the petition for the appeal, is that, "A will once revoked by marriage can only be revived by a valid re-execution.   Mere subsequent recognition will not revive it," and the text refers to *Stewart* v. *Mulholland*, also just mentioned, to support the text.   The head note of the latter case sustains this text, and, seemingly, so does a statement in one part of the opinion.   But when the whole of the opinion on this subject is read it is clear that all it means to say is merely that the *verbal declarations* of the testatrix, made after her marriage, recognizing a will made prior to and revoked by her marriage, did not constitute a republi-

cation of such will under the Kentucky statute on the subject of the revival of revoked wills (which is the same as the aforesaid Virginia statute on the subject). The reason for such a holding is obvious. The case last mentioned, as cited for appellants, of *Bohanon* v. *Walcot*, concerns revocation only, and does not involve the subject of revival or republication of wills.

The decree under review will be affirmed.

*Affirmed.*