[L. A. No. 16412. In Bank.—April 20, 1938.]

In the Matter of the Estate of ROWZEE J. BOWER, Deceased. WALTER V. BOWER, Appellant, v. ANNA K. DEBILLIER, Respondent.

██ ██

Perry Evans and Siemon & Claflin for Appellant.

Claflin, Dorsey & Campbell for Respondent.

WASTE, C. J.—This is an appeal from an order admitting a document to probate as the last will and testament of the decedent and appointing respondent administratrix with the will annexed. The document bears date of March 4, 1932, and purports to devise the decedent's entire estate to respondent, a stranger to the blood. It was admitted to probate as an holographic will, the court below finding that it was "entirely written, dated and signed by the hand of the said decedent". The contestant and appellant is a brother of the decedent who has contended at all times that the document is invalid as an holographic will because not entirely in the handwriting of the decedent. He claims as an heir at law and as a devisee under an earlier testamentary effort by the terms of which the decedent undertook to dispose of his estate in equal shares to his sister and two brothers. This earlier document was likewise found by the court below to be entirely written, dated and signed by the decedent but was denied probate because of the existence of the later and inconsistent document which, as stated, was found to be validly executed.

In order to facilitate our discussion of the issue whether the later document was properly admitted to probate as a validly executed holographic will we shall quote all of the reading matter appearing on the paper. For purposes of clarity we italicize all portions that are in the handwriting of the decedent. All other portions are printed matter, common to a stationer's form, and appeared upon the paper prior

to the decedent's effort to execute a will thereon. The paper reads:

" Last Will and Testament

In the Name of God, Amen, I, *R. J. Bower* ...... of ........ *Bakersfield* ........ State of ........ *California* ........ of the age of .... *61* .... years, and being of sound and disposing mind and memory and not acting under duress, menace, fraud, or undue influence of any person whatever, do make, publish and declare this my last WILL AND TESTAMENT in the manner following, that is to say:

First: *I give and bequeath all my Property of Every Kind and Description Whatsoever Whether Real or Personal to Anna K. deBillier*

Secondly: *R. J. Bower*

*Mach fourth*

*Nineteen hundred thirty two* "

The court below admitted to probate only the latter portion of the foregoing document, reading "I give and bequeath all my Property of Every Kind and Description Whatsoever Whether Real or Personal to Anna K. deBillier. R. J. Bower, Mach fourth Nineteen hundred thirty two," on the ground that it was entirely written, dated and signed by the decedent as required by section 53 of the Probate Code. However, in so doing, it disregarded certain other portions of the document also in the handwriting of the decedent. This was error on the part of the court below. It is the function of the court to apply the pertinent rules of law to the entire instrument as *executed* by the decedent and not as deleted and reconstructed by the court. In *Estate of Rand,* 61 Cal. 468, 471 [44 Am. Rep. 555], wherein the blank spaces in a form will were filled by the decedent, it was held that the instrument should be read and considered in its entirety in passing upon its validity.

To the same effect is the decision in *In re Wolcott's Estate,* 54 Utah, 165 [180 Pac. 169, 170, 171, 4 A. L. R. 727], wherein the decedent likewise filled the blank spaces provided in a stationer's form will and then in her own handwriting made several specific bequests. The proponent of the will offered for probate only such portions as were in the handwriting of the decedent. In rejecting this offer, the court declared

that "If there are authorities sustaining the right of a party to offer for probate as a will such portions of a document as he may desire for the purpose of making a case, while excluding other portions which would defeat his purpose, such authorities are not well considered, and we would hesitate to follow them. If the matter excluded from the offer was totally disconnected therefrom, was not germane, or was entirely irrelevant to the purpose and object of the instrument, a different question would be presented. Such matter might be treated as surplusage and disregarded. . . . The fact that the matter written by deceased in her own hand, standing alone, might constitute a complete testamentary disposition of her property, does not alter the case. The document offered by appellant is not the document prepared by deceased as her will."

■ It is our duty, therefore, in determining the validity of the instrument here before us to consider all parts thereof that are in the handwriting of the decedent, whether or not indispensable thereto. Then, and only then, can the established rules of law be correctly applied to the document as a whole and an accurate conclusion reached as to its validity. This conclusion obviously requires us to take into account the words and figures "R. J. Bower", "Bakersfield", "California", and "61", appearing at the beginning thereof and inserted in the *handwriting* of the decedent in the blank spaces provided therefor in the printed form employed by the decedent. When all portions in the handwriting of the decedent are considered and the instrument is read as a whole, we are constrained to declare that it is not entirely written by the hand of the decedent and is therefore invalid as an holographic will. It always has been, and still is, the law of this state that an holographic will to be effective must be entirely written, dated and signed by the hand of the testator. (See former sec. 1277, Civ. Code; sec. 53, Prob. Code.) The authorities wherein this rule is discussed are legion. We need mention but two. In the *Estate of Thorn*, 183 Cal. 512 [192 Pac. 19], the instrument was declared invalid as an holographic will because of the presence in the body thereof of a rubber stamp impression of the name of the property or country place therein sought to be devised, and this despite the presence in the document of an additional and adequate description of the property in the handwriting

of the decedent. Necessarily, it there had to be held that the presence in the body of the will of printed matter precluded the document from being entirely written by the hand of the testator.

In the *Estate of Bernard,* 197 Cal. 36 [239 Pac. 404], the document was written on hotel stationery and read as follows:

"The following 4 sheets of paper included, *Long Beach, California,* Oct. 12, 1918.

I, Josephine Bernard of the City and County of Denver, Colo. do hereby declare this to be my last will and testament."

Then followed several dispositive provisions. All of the document but the italicized words "Long Beach, California" was in the handwriting of the decedent. The italicized words were printed on the paper. As one ground of the decision it was held that the instrument was not entirely written by the hand of the decedent. This was so, it was stated, because the decedent by writing in her own hand above the printed date line the words "The following 4 sheets of paper", evidenced an intention that "The printed words [were] *incorporated* in and doubtless were intended to be made a part of the heading of the document".

So it is in the present case. Consideration of all portions of the document here involved which are in the handwriting of the decedent, and particularly the written inserts in the blanks provided in the printed form, definitely indicate that the decedent intended to include and incorporate in his will the printed portions among which the written inserts appear. That this is so, may be demonstrated by one illustration. The figures "61" in the handwriting of the decedent are meaningless unless read in connection with the printed words "of the age of.... [61]....years". True, such introductory written and printed matters are not essential to a testamentary document. But, the fact remains that the decedent herein concluded that they were indispensable to and should be a part of *his* will and he manifestly made them a part of *his* will. This is not the first instance wherein matter, unnecessary from a purely legal viewpoint, has made its way into the body of a document testamentary in character. As stated above, we are to read the decedent's will as *he wrote it* and not as we would write it in order to cause it to comply with established legal principles. We therefore repeat that

the document here before us is invalid because not entirely written by the hand of the testator as required by the provisions of section 53 of the Probate Code and the holdings in the Thorn and Bernard cases, *supra*.

In declaring the instrument invalid as an holographic will, we have not lost sight of the decisions in *Estate of Oldham,* 203 Cal. 618 [265 Pac. 183] and *Estate of De Caccia,* 205 Cal. 719 [273 Pac. 552, 61 A. L. R. 393]. As we read the latter two cases, they hold that the mere presence of printed matter upon the paper does not vitiate an otherwise valid holographic will written entirely by the hand of the testator *if such printed matter be not expressly or impliedly incorporated in the provisions which are in the handwriting of the decedent.* Examination of the last two cited cases discloses that the extraneous matter involved consisted in one instance of a printed letter head and in the other of a line containing the printed words ''Oakland, California'' appearing at the top of one page of an unfolded double sheet of paper used by the testator. In each of these cases this court took occasion to point out that such printed matter was in no way incorporated in or made a part of the written instrument. In the Oldham case, *supra,* 620, 621, in discussing the effect of the printed letter head which merely disclosed the name and office location of the testator, this court declared that ''we find no reference whatever to the printed words appearing upon stationery used by the deceased in the preparation of said instrument. These printed words are not expressly, by direct reference, or impliedly, by inference or otherwise, made a part of the written instrument set forth on the sheets of paper upon which they appear . . . The printed words appearing upon the three sheets of paper upon which the deceased attempted to write his will are wholly disconnected from the writing itself, and they form no part thereof. Our attention has not been called to any authority, nor are we aware of any such, which holds that the mere presence of printed words upon a sheet of paper, used by a person for the purpose of writing thereon a holographic will, renders the will invalid *when such printed matter is no part of the writing, and is wholly dissociated therefrom.''* The latter part of the foregoing quotation, and a reading of the case, definitely indicates that the court had clearly in mind, and indirectly, if not directly, approved the rule of the Thorn

and Bernard cases, *supra*, which rule, we think, is controlling here.

In the *Estate of De Caccia, supra*, 724–726, wherein this court held that the printed words "Oakland, California", appearing at the top of one page of an unfolded double sheet of paper used by the testator, did not invalidate the will there involved, it was stated that "The printed words are not preceded by any writing of the decedent in which a reference is made to said printed matter, as was found to be the case in *Estate of Bernard, supra*, indicating that it was the intention of the testator to make them a part of the instrument. . . . Even if the testator intentionally wrote some part or the whole of the first line above the printed matter, but did not make any reference therein to the printed words, we hardly see how the mere fact of this relative position of the words in the instrument would indicate any intention to make the printed words a part of the will. . . . The fact, therefore, that a part of the first line, written by the deceased, was slightly above the printed words does not, in our opinion, show any intention to make the printed matter upon the paper a part of the document written thereon. . . . Nowhere in said instrument is there any reference made to the printed words upon the sheet of paper used by said decedent for the purpose of writing his will. The printed words are in no way essential to the validity of the instrument as a holographic will, and we are not to presume that the decedent made them a part of the instrument he executed *without some evidence appearing upon the face of the instrument itself manifesting such an intention.* The mere presence of printed matter upon stationery used by a person for the purpose of writing his holographic will *which forms no part of the written instrument and to which no reference directly or indirectly is made in the written instrument,* will not destroy the effect of such instrument as a holographic will." (Italics ours.) Here, again, it may be said that the court had in mind the rule of the earlier cited cases to the effect that printed matter appearing on the paper and which may reasonably be said to have been intended by the decedent to constitute a part of his attempted holographic will, destroys the validity of the same.

In the instant case, as already pointed out, the written words, at least indirectly, refer to and include in the will

as written and executed by the decedent the printed matter appearing upon the form employed by the decedent. It appears obvious that the testator by inserting words in his own handwriting in the blank spaces appearing in the printed form intended that such written words should be read with and, where necessary, explained or given meaning by reference to the printed portions of the form. The document, as executed by the decedent, may not reasonably be read in any other light, respondent's contention to the contrary notwithstanding. It clearly appears, therefore, from the face of the will itself that the printed matter was intended by the decedent to be incorporated in the will as executed by him. This, as already indicated, is fatal to its validity.

In passing, it should be stated, merely for purposes of clarity, that the Thorn and Bernard cases, *supra*, here relied on, are not in conflict with the later Oldham and De Caccia cases, *supra*. These two lines of cases apply to different factual situations and are consistent and distinguishable one from the other. The distinction is expressly recognized in the two later cases. Under the Thorn and Bernard cases, an holographic will is invalid if printed matter appearing on the paper is directly or indirectly incorporated or included in the provisions written by the hand of the decedent. Such, as we have shown, is the factual situation which confronts us in the present case. While under the later Oldham and De Caccia cases, the mere presence of printed matter on the paper is not fatal to the validity of an holographic will written thereon if such printed matter be not included or incorporated, directly or indirectly, in the will as written by the hand of the decedent.

In closing, it should be added that section 53 of the Probate Code, the counterpart of the former section 1277 of the Civil Code, offers no obstacle to the conclusion here announced. The cited code section merely has codified the rule of the De Caccia case, *supra*, by adding to the declaration that an holographic will is subject to no other form than that it be entirely written, dated and signed by the hand of the testator, an additional sentence to the effect that "No address, date or other matter written, printed or stamped upon the document, *which is not incorporated in the provisions which are in the handwriting of the decedent*, shall be considered as any part of the will." That this sentence was

188

added to the section to codify the rule announced in the De Caccia case, appears from the code commissioner's statement to that effect appended by way of note to the section. Respondent concedes this to be so. But, as we have shown, the rule announced in the De Caccia case is not applicable to the factual situation here presented.

The order appealed from is reversed with directions to the court below to proceed as herein indicated.

Curtis, J., Shenk, J., Edmonds, J., Langdon, J., and Seawell, J., concurred.