[Civ. No. 12164. First Dist., Div. One. Oct. 2, 1942.]

Estate · of WILLIAM G. GOLDSWORTHY, Deceased.
JAMES J. BROZ, as Executor, etc., et al., Appellants,
v. ALBERT HODGE, Respondent.

James J. Broz in pro. per., for Appellants.

Byron Coleman for Respondent.

WAGLER, J. pro tem.—This is an appeal from an order denying probate to a certain document offered as the holographic will of William G. Goldsworthy. The document in question is written on a printed stationer's form marked "Crocker's Blank No. 2508-Will." This form consists of a double sheet of paper, each sheet being 8½ by 14 inches in size; the two sheets constitute four pages. On the first page the following printed and written matter appears. For the purpose of clarity all portions in the handwriting of deceased are italicized:

"I, ..............................................., of........................, County of ............................................, State of..............................................., of the age of...........years, being of sound and disposing mind and memory, and not acting under duress, menace, fraud, or undue influence of any person or any sort whatever, do make and declare this to be my last WILL AND TESTAMENT.

FIRST, *20 Per cent of my estate to*
*Mrs. Iren Orr*

*926-1/2 Diamond st*
*San Francisco*
*20 Per cent of my estate to Mrs. Hortence Dean*
*Harry Lemintyrs*
*Daughtr*
~~SECONDLY,~~ *20 Per cent of my estate to*
*Mrs Larain Hoot*

*Harry Lemintyrs*
*Daughts*

> *20 Per Cent of my estate to Mrs & Mr*
> *Frans Bellisle*
>
> > *247 - 15 av*
> > *San Francisco*
>
> *Money in Bank of Amecia*
> > *Branch Masion & Market st*
> *and my personal things*
> *My Friend*
> *Mr. James Broze*
> > > *my attornay*
> *Will act has my administraer with out*
> *Bounds and to receve the usel fee*
> > > *Then the Balance of*
> *my astate to be divey equally betwn*
> *my 5 frunes. This Will I make in my*
> *Soud Mine.*
> > *SG W Goldsworthy."*

Page two is blank. Page three contains the following printed matter:

"LASTLY. I hereby nominate and appoint........................................
the executor...... of this my last will and testament, and hereby revoke all former wills by me made.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this.......................................day of..................................., in the year of our Lord one thousand nine hundred and..............................
THE FOREGOING INSTRUMENT, consisting of.........................
page, beside this, was, at the date thereof, by the said
..............................................................Signed and Sealed and Published as, and declared to be......................................last Will and Testament, in the presence of us, who, at...........................request, and in......................
presence, and in the presence of each other, have hereunto subscribed our names as witnesses thereto.

..............................................................residing at .........................................
..............................................................residing at ................................... "

The fourth page, which is the back of the document, is divided into sections for folding. One of these sections contains the following written and printed matter:

"THE
LAST WILL AND TESTAMENT
of
*W. Goldsworthy*

| Dated *June 22* | , | *1940* |
|---|---|---|
| Filed | , | 19 |
| | | ⸱ Clerk |
| By | Deputy | Clerk"|

It is conceded by all parties that the letters "SG" preceding the name "W. Goldsworthy" at the end of page 1 are in the handwriting of the decedent, and that they were intended by the decedent as an abbreviation for the word "signed."

The lower court found that decedent intended the printed matter contained on page 1 of the stationer's blank to be a part of his will; that there was no date on the face of the purported will, and that the inscription on the fourth page ("THE LAST WILL AND TESTAMENT of *W. Goldsworthy*......................................Dated *June 22* , *1940*") was merely descriptive of the contents of said document and not a part of said purported will.

If these findings of the trial court are correct, obviously the document does not comply with the provisions of section 53 of the Probate Code, which reads as follows:

"A holographic will is one that is entirely written, dated and signed by the hand of the testator himself. It is subject to no other form, and need not be witnessed. No address, date or other matter written, printed or stamped upon the document, which is not incorporated in the provisions which are in the handwriting of the decedent, shall be considered as any part of the will."

 The rule is well established in this state that a document, holographic in form, to be valid as a testamentary disposition must comply strictly with this section. (*Estate of Rand,* 61 Cal. 468 [44 Am. Rep. 555]; *Estate of Billings,* 64 Cal. 427 [1 Pac. 701]; *Estate of Plumel,* 151 Cal. 77 [90 Pac. 192, 121 Am. St. Rep. 100]; *Estate of Dreyfus,* 175 Cal. 417 [165 Pac. 941, L. R. A. 1917F, 391]; *Estate of Thorn,* 183 Cal. 512 [192 Pac. 19]; *Estate of Bernard,* 197 Cal. 36 [239 Pac. 404]; *Estate of Bower,* 11 Cal. (2d) 180 [78 P. (2d) 1012]; *Estate of Towle,* 14 Cal. (2d) 261 [93 P. (2d) 555, 124 A. L. R. 624].)

Appellants presented evidence to the effect that the document was found among decedent's papers in his hotel room after his death; that he was a man over sixty years of age, without formal education, and "was unaware of the legal necessities of making an holographic will." No evidence was offered regarding the circumstances under which the alleged will was executed.

Appellants contend that under the facts here presented the trial court was called upon to do nothing more than to construe and interpret the written document; that the question whether the document does or does not comply with the requirements of section 53 of the Probate Code is, under such circumstances, a question of law and not one of fact, and that this court is free to disregard the findings of the lower court. With these contentions we cannot agree.

It is well settled that the question of the due execution of a will is one of fact, and that the trial court's determination on this issue cannot be overturned unless that determination is without support in the evidence. (*Estate of Cullberg,* 169 Cal. 365 [146 Pac. 888].)

In *Estate of Streeton,* 183 Cal. 284 [191 Pac. 16], no evidence was offered on the issue of execution except the document itself. The Supreme Court stated (p. 289) : "the finding of the trial court to the effect that the testator signed his name at the top of the will with the intention of authenticating the instrument was sustained by a 'positive and satisfactory inference' *arising from the face of the document itself.*" (Italics added.)

In *Estate of Maguire,* 14 Cal. App. (2d) 388 [58 P. (2d) 209], one of the questions presented was whether the date contained on an envelope in which the will was found was to be considered a part of the will. Although no direct evidence was offered on the point, the court held that the determination of the trial court to the contrary was a question of fact which could not be overthrown on appeal, even though the question might have been determined either way by the fact finder.

In the case at bar the trial court found that the decedent intended to incorporate the printed matter on page one of the form and make it a part of his will. The fact that decedent did not fill in the blanks in the introductory clause gives rise to an inference to the contrary. (*Estate of Bower, supra.*) However, we believe that the circumstances and all other legiti-

mate inferences to be drawn from an examination of the document itself support the finding of the trial court. Appellant's own testimony that decedent was "unaware of the legal necessities of making an holographic will" weakens, rather than strengthens, his position; had decedent been aware of the requirements of section 53 we may legitimately infer that a printed form would not have been used. The fact that the decedent did use a printed form is some evidence that it was procured by him for the purpose of using the printed words to manifest his intention in a formal manner. Certainly, he hoped to accomplish something by the use of the form. In order to obtain such a form he had to go to a stationery store and purchase it. Even then he was under no compulsion to use it directly as a means of expressing his intentions; he could have used a blank sheet of paper and copied from the form those portions which he thought essential to his purpose. This he did not do. He deliberately and intentionally wrote his will on the form which he obtained for that very purpose. The manner in which the decedent expressed himself in his first written words is some evidence of the fact that he intended to make use of the introductory clause preceding his first written words. It is true that it can be argued that the words in the hand of the testator on page one, standing alone, constitute a complete testamentary disposition, and that a testamentary intent can be inferred from the words which are in the hand of the testator. It must be conceded, however, that testamentary intent is much more evident and that the document is much more complete and intelligible when the printed portions are read with the portions in decedent's own handwriting. Furthermore, from the fact that the decedent struck out the printed word "Secondly" on page one, we may infer that he intended to make use of the printed words on the same page not so stricken out.

The only case which has come to our attention wherein the use of a printed form was not held fatal to a valid holographic disposition is the case of *Gooch* v. *Gooch*, 134 Va. 21 [113 S. E. 873]. In the Gooch case the testator, during the process of initiation into a secret society, was supplied with a printed form very similar to the form used in the case at bar, and was instructed that it was his present duty to make his will, but that if a will had previously been made he could so state the fact. Thereupon, the testator wrote the following between the introductory clause and the attestation clause: "My will

is made in favor of my wife, Loulie M. Gooch, duly signed and filed. Witnessed by: E. W. Poindexter and A. C. Hopwood, Attorneys in Roanoke, Va." The court held that the printed portions were surplusage, and that the statement written by the candidate constituted a valid holographic republication of his former will. We agree with this conclusion. The very language used by the testator demonstrates an intention *NOT* to make use of the printed portions of the form. The testator had previously drawn his will and he was apparently satisfied with its provisions; it could not be said that he intended to incorporate the printed provisions expressing testamentary intent, when in fact his very language shows that no testamentary intent was in his mind at the time. The mere fact this act constituted a valid republication so as to validate his will drawn prior to the birth of a child, does not support the contention of appellants in the case at bar.

In those cases wherein the decedent has used a printed form on which to express a testamentary disposition, the documents have consistently been rejected as valid holographic dispositions. (See *Estate of Bower, supra; Estate of Rand, supra; In re Wolcott's Estate,* 54 Utah 165 [180 Pac. 169, 4 A. L. R. 727]; *Maris* v. *Adams,* (Tex. Civ. App.) 166 S. W. 475.)

The finding of the trial court that the alleged will was not dated is also supported by legitimate inferences to be drawn from an examination of the instrument itself. On the back of the form, after the printed words "Last Will and Testament of," the decedent wrote his name; after the printed word "Dated," he wrote *"June 22,"* and after the figure *"19,"* he added the figure *"40."* If the contents of this page can be considered a part of the will, the date is sufficient. In other words, the fact that the figure *"19"* was printed, would not invalidate the date. (*Estate of Durlewanger,* 41 Cal. App. (2d) 750 [107 P. (2d) 477].) On the other hand, if the back of the instrument cannot be considered a part of the will, the instrument is without date. This, of course, would be a fatal defect. An examination of the document shows that when the deceased affixed his signature to the first page he placed the letters "SG" in front of his name. It is agreed that these letters were intended by the deceased as an abbreviation of the word "Signed." Under such circumstances, the trial court was justified in concluding that decedent affixed his signature at the bottom of page one for the purpose of authenticating

the document as a will, and that, when he placed his name on the back of the instrument, he did so not for the purpose of authentication but for the purpose of identifying the document. (*Estate of Maguire, supra; Estate of Manchester,* 174 Cal. 417 [163 Pac. 358, Ann. Cas. 1918B, 227].) To hold that the name was placed on the back of the document for the sole purpose of identifying the document, and that the date was placed thereon as a part of the act of execution, would be a strained and unreasonable construction. This court should not supplant a trial court's construction of the instrument which is supported by reasonable inferences by a strained construction merely to satisfy the policy of the law favoring testacy rather than intestacy.

In *Estate of Maguire, supra,* an undated holographic will was enclosed and sealed in an envelope which bore on its face, "Will of H. F. Maguire Mch. 8th, 1930" in the handwriting of the testator. The trial court held that the inscription on the envelope was merely descriptive of the contents and therefore not a part of the will. It was held that this finding could not be disturbed on appeal.

The last page of the document here in question falls in the same category as the back of any legal document or the writing on the face of an envelope enclosing a document. It is not a part of the document itself; it is merely a description of the contents. As stated by the Supreme Court in *Estate of Manchester, supra,* at page 419: "The defect is not cured by the words 'My Will' indorsed on the envelope and signed by the decedent. The manifest purpose of that indorsement was to state that the paper within the sealed envelope was the will of Ida Matilda Manchester. It shows that the decedent believed that the inclosed document was her will, and indicates that she believed that it was lawfully executed and valid. But her belief that it was a valid will, properly executed, does not make it so. The power to dispose of one's property by will and the mode by which it may be exercised are matters under legislative control, and the mode prescribed by the statute must be followed, or there is no will."

The appellants also urge that the Legislature, by the addition of the concluding sentence of section 53 of the Probate Code, intended to establish a more liberal rule in the construction of holographic wills (*Estate of Durlewanger, supra*), and that, since the portion of the document in the handwriting of

the decedent constitutes a complete disposition of his property, the printed portion should be treated as surplusage.

We do not believe that the Legislature intended in anywise to change the law by its amendment of section 53 in 1931. The history of the amendment shows that said sentence was added in 1931, like many other provisions of the Probate Code, for the purpose of codifying the then existing law. This is the view expressed by Mr. Justice Curtis in *Estate of Towle,* 14 Cal. (2d) 261 [93 P. (2d) 555, 124 A. L. R. 624]. *Estate of Bower, supra,* expressly holds that this sentence was added to codify a rule announced in the *Estate of De Caccia,* 205 Cal. 719 [273 Pac. 552, 61 A. L. R. 393]. To sustain the will in this case would require us to read into the statute, language which is not to be found therein.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.