COURT OF APPEALS OF VIRGINIA

Present:   Judges AtLee, Friedman and Raphael
Argued at Lexington, Virginia

**UNPUBLISHED**

KELLIE RENEE JOHNSON AND
  CHRISTOPHER AARON JOHNSON

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0059-22-3              JUDGE RICHARD Y. ATLEE, JR.
                                                    OCTOBER 11, 2022

VICKIE AMANTIA JOHNSON, INDIVIDUALLY AND
  IN HER FORMER CAPACITY AS CO-EXECUTOR
  OF THE ESTATE OF HAZEL CARTER JOHNSON,
  KEVIN RAY JOHNSON, INDIVIDUALLY AND
  IN HIS FORMER CAPACITY AS CO-EXECUTOR
  OF THE ESTATE OF HAZEL CARTER JOHNSON,
  ALEXIS RENEE KELLY, ALYSSA RENEE MOSES,
  KAYLA JOHNSON, MELISSA LONG, AND
  BRANDON O. NESTER, IN HIS CAPACITY AS
  COURT-APPOINTED ADMINISTRATOR OF
  THE ESTATE OF HAZEL CARTER JOHNSON

FROM THE CIRCUIT COURT OF BEDFORD COUNTY
James W. Updike, Jr., Judge

John S. Koehler (Justin Steele; Harry F. Bosen, Jr.; Law Office of
James Steele, PLLC, on brief), for appellants.

John S. Edwards (Edwards Law Firm, on brief), for appellees
Vickie Amantia Johnson and Kevin Ray Johnson.

No brief or argument for appellees Alexis Renee Kelly, Alyssa
Renee Moses, Kayla Johnson, Melissa Long, and Brandon O.
Nester, in his capacity as court-appointed administrator of the
estate of Hazel Carter Johnson.

This case concerns the construction and effect of various wills and codicils, executed by

Hazel C. Johnson ("Hazel"), prior to her passing.  The parties are primarily Hazel's descendants.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The appellants are Hazel's daughter, Kellie,[1] and grandson (Kellie's son), Christopher Aaron ("Aaron"). The appellees are two of Hazel's other children, Vickie and Kevin, as well as Hazel's grandchildren[2] and the court-appointed administrator. The appellants challenge the circuit court's ruling that several documents executed prior to Hazel's passing failed to revive an earlier revoked will, and thus Hazel died intestate. For the following reasons, we affirm.

## I. BACKGROUND

Hazel and her husband, Gerald, had five children.[3] Gerald passed away in 2013. On March 18, 2015, Hazel executed a will drafted by an attorney, Candace Rivers ("the first will"). The first will made specific real and personal property bequests to Kellie, Aaron, Alyssa, and Kevin. It directed that any other real property was to be sold and the proceeds divided equally among Kellie, Vickie, and Kevin. The will directed that any residue of Hazel's estate should be sold and the proceeds divided equally among her children and grandchildren.[4] The first will named Kellie as executor, with Alexis as a replacement. It was properly executed, witnessed, and notarized.

On July 12, 2018, Hazel was admitted to the hospital for heart and kidney failure. Following Hazel's admission, discord arose between Hazel's children with respect to her estate and the division of her personal property. The following events all took place while Hazel was hospitalized, where she remained until her death on July 31, 2018.

---

[1] Since the decedent and most of the parties share a common surname, we identify each by their given name.

[2] These include Kellie's other children, Alexis and Alyssa, and Kevin's daughter, Kayla. Kevin passed away during the pendency of this appeal. Melissa Long, the daughter of Steven (who predeceased his mother Hazel), is also a named appellee.

[3] Two of Hazel and Gerald's five children predeceased their parents.

[4] Article 1, section A of the first will also provided that Hazel may leave a "written statement or list identifying a person or persons to receive one or more items of my tangible personal property," and Hazel signed such a document on October 21, 2015. *See* Code § 64.2-400.

On July 23, 2018, Vickie and Kevin presented a document, titled the "Last Will and Testament of Hazel Carter Johnson," to Hazel for her signature ("the second will"[5]). The document was a standard form obtained from RocketLawyer.com. Crucially, it "revoke[d Hazel's] former Wills and Codicils" and "declare[d] this to be my Last Will and Testament." In the portion covering "disposition of property," the spaces left for designating specific bequests, distribution of tangible personal property, and distribution of the residuary estate were all left blank. The only completed portions of the second will named Vickie and Kevin as co-executors, with Kellie as a replacement in the event of their inability to perform the task. The document was signed by Hazel and two witnesses.

On July 29, 2018, Hazel signed three more documents, each provided to her by Kellie. The first is a handwritten document stating, "I Hazel Johnson would like to change exceutor [sic] of will back to Kellie Renee Johnson & Alexis Renee Kelley" ("the first codicil").

The second document ("the second codicil"), titled "Final Last Will Codicil to Last Will Codicil of Hazel Carter Johnson," states:

> I, Hazel Carter Johnson (the 'Testatrix') of Vinton, Virginia, declare
> this to be my FINAL codicil to my last will Codicil[6]:

---

[5] No party argues on appeal that the second will was not valid for failure to evince testamentary intent (as it did not include any bequests or directions for the distribution of the estate). *See Poindexter v. Jones*, 200 Va. 372, 377 (1958) ("The court recognized and emphasized the settled doctrine that there must be indicia of testamentary intent *on the face of the paper*."). This Court assumes without deciding that this characterization of this document is correct because, with respect to the questions before us, it unquestionably served as a valid revocation of the first will.

[6] It is not entirely clear which document, among the various documents at issue, the "Last Will Codicil" refers to. Given that the second codicil modifies that "Last Will Codicil" to change the named executors from Vickie and Kevin, though, the most reasonable inference is it refers to the second will.

1. My Last Will Codicil will be modified as follows:

   My executor of my Last Will Codicil will be changed from "Vickie Lynn Johnson" to "Kellie Johnson of Goodview, Virginia".

2. My Last Will Codicil will be modified as follows:

   My executor of my Last Will Codicil will be changed from "Kevin Ray Johnson" to "Kellie Johnson of Goodview, Virginia".

3. I hereby confirm and republish my Last Will codicil in all respects other than those mentioned here.

The third document ("the third codicil") is a typewritten paragraph, stating:

> I, Hazel Johnson[,] deem all documents updated after the First Will written by Cand[a]ce Rivers naming Vickie Lynn Johnson and Kevin Ray Johnson as executors and trustees to be voided. All documents naming Vickie Lynn Johnson and Kevin Ray Johnson executor of estate to be null and void. All documents signed and dated on the 29th of July 2018 are valid. All previous codicils deeming Vickie Lynn Johnson and Kevin Ray Johnson executors and trustees are null and void. The final codicil is naming Kellie Renee Johnson the sole executor of the estate and trustee is valid. Alexis Renee Kelley is to be the successor executor and trustee of the estate. This final codicil should make Article Four of the original will[7] valid with no additional executors of estate and trustees other than Kellie Renee Johnson and successor Alexis Renee Kelley.

Each of these documents was signed by Hazel and two witnesses. The second was also notarized and includes a self-proving clause. Code § 64.2-452.

Following Hazel's death, Vickie and Kevin presented the second will for probate and qualified as co-executors. Kellie filed a complaint in the circuit court challenging the validity of the second will and Vickie's and Kevin's status as co-executors. At trial, much of the evidence concerned Hazel's testamentary capacity at the time she signed each of the 2018 documents and

---

[7] The referenced "Article Four of the original will" solely addresses naming the first will's executors: "I nominate my daughter, KELLIE R. JOHNSON, as Executor and Trustee of any trust created herein. I nominate my granddaughter, ALEXIS R. KELLEY as Successor Executor and as Successor Trustee, if such be required. I hereby waive surety on the bond of any executor or trustee name herein."

- 4 -

whether there had been any undue influence or coercion in procuring her signatures. The circuit court concluded that each of these documents was valid, that Hazel possessed testamentary capacity and intent when she signed them, and that they were not procured by undue influence or coercion. The parties do not contest these findings on appeal.

The circuit court concluded that the second will expressly revoked the first will and that the subsequent codicils revoked the second will. Those codicils, however, did not revive the first will. Accordingly, the circuit court concluded that Hazel died intestate. It appointed a neutral third-party administrator of the estate. This appeal follows.

## II. ANALYSIS

This matter serves as a cautionary tale of sorts, revealing the risks and unintended consequences that can result from hasty, uncounseled action. It seems evident that no one— including the parties—intended or wished for Hazel to die intestate.[8] Nevertheless, we are bound by the express directions as they are conveyed by the plain language of Hazel's signed wills and codicils. A key reason these written words have such power is because, invariably, we cannot ask the decedent what they intended. And so, with few exceptions not at issue here, we must assume that any document duly signed and witnessed expressed her wishes. Giving those words effect, we agree with the circuit court that no valid will was in place at the time of Hazel's passing.

### A. *Standard of Review*

The issues before us concern the construction and effect of Hazel's various wills and codicils. These are matters of law, which we review de novo. *Lane v. Starke*, 279 Va. 686, 690 (2010).

---

[8] Presumably there was a fundamental misunderstanding among the parties of the role and "powers" of an estate's executor that culminated in a scramble to be named as Hazel's.

B.  *Hazel had no valid will in place when she died*

The crux of appellants' argument is that, read together, the three July 29 codicils evince Hazel's intent to revive her first will.

"If a testator executes a will in the manner required by law or other writing in the manner in which a will is required to be executed that expressly revokes a former will, such former will, including any codicil thereto, is *void and of no effect*."  Code § 64.2-410(B) (emphasis added).

To revive a previously-revoked will or codicil, Virginia provides that "[a]ny will or codicil, or any part thereof[,] that has been revoked pursuant to § 64.2-410 shall not be revived unless such will or codicil is reexecuted in the manner required by law."  Code § 64.2-411.  "Such revival operates only to the extent that the *testator's intent to revive the will or codicil is shown*."  *Id.* (emphasis added).

Thus, by the plain language of Code § 64.2-411, the first will would need to have been "reexecuted in the manner required by law" in order to be revived.  Among other things, this would require that it be signed by the testator and two witnesses.  *See* Code § 64.2-403.  Additionally, the reviving document must show "the testator's intent to revive the will or codicil."  Code § 64.2-411.  Appellants argue that the July 29 codicils reveal that Hazel intended to revive and reexecute her first will.  We disagree.

It is uncontested that the second will effectively revoked the first will, since it "revoke[d Hazel's] former Wills and Codicils."  It is immaterial that the second will contained no specific bequests or instructions for distribution of Hazel's estate.  *See Poindexter v. Jones*, 200 Va. 372, 383 (1958) (explaining that a "declaratory revocation may assume the shape of a last will and testament" but that this is not necessary for a document to nonetheless effectively revoke a previous will).

The July 29 codicils expressly evince the intent to revoke the second will. Most evidently, the third codicil declares that "all documents updated after the First Will written by Cand[a]ce Rivers naming Vickie Lynn Johnson and Kevin Ray Johnson as executors and trustees [are] to be voided" and "[a]ll documents" and "previous codicils" "naming Vickie Lynn Johnson and Kevin Ray Johnson executor of estate [are] null and void." Thus, the second will was effectively revoked.

However, none of the July 29 codicils effectively revive or reexecute the first will. The revocation of the second will did not, without more, revive the first will. *See Poindexter*, 200 Va. at 381 (noting that "after such revocation the destruction [or revocation] of the latter will does not have the effect of reviving the former, even though the testator so intends" (quoting *Clark v. Hugo*, 130 Va. 99, 106 (1921))). Although the third codicil "make[s] Article Four of the original will valid," that provision concerns only the naming of executors—it has no bearing on the distribution of Hazel's estate. The second codicil "confirm[s] and republish[es] my Last Will codicil in all respects other than those mentioned here." But there is no reasonable way to conclude that the "Last Will codicil" refers to the first will.

Appellants argue that, since the first codicil changes the executors "back" to Kellie and Alexis, we should infer that it expresses the intent to revive the entirety of the first will. Unfortunately, the plain language used in the codicils, which revived only Article Four of the first will, fails to support that argument. A codicil may revive an earlier will even if the testator does not realize that the earlier will has been revoked, but to do so, it is "essential" that the codicil show that the earlier will "still expresses the testamentary intention of the testator as of the time of the execution of the codicil, and to what extent the will still expresses that intention, whether to the extent of the whole will, and, if not, to what extent." *Gooch v. Gooch*, 134 Va. 21, 35 (1922).

The July 29 codicils undoubtedly demonstrate an intention to change the executors of Hazel's estate. But the third codicil, by its express terms, only refers to Article Four of the original will. Given that, and the absence of any reasonably clear indication that the original will as a whole continued to express Hazel's testamentary intention, we cannot conclude that there was an intent to revive the entirety of Hazel's original will. Accordingly, since any valid wills were expressly revoked, and none were ever revived or reexecuted, Hazel died intestate.

### III. CONCLUSION

We find no error in the circuit court's decision and, therefore, affirm.

*Affirmed.*